Okay, we'll call our first case PPG IndustriesvsJiangsu Tie Mao Glass Co Ltd, Mr. Spurl. Good morning, your honors. May it please the court. My name is Andrew Spurl. I represent the defendants, appellants TMG and the individual defendants. I see it's on my clock already. I'd like to reserve three minutes for rebuttal. Let's start. You may proceed. Thank you. May it please the court. This case is not about whether the plaintiff, PPG, is entitled to recover on its claim for trade secret misappropriation. PPG has already obtained substantial recovery in this case in the form of a permanent injunction barring TMG's future use of the trade secrets, and there's no dispute. Are you still taking the position that they can't have damages if there's a future forward-looking injunction? Under the facts of this case, they can't, and that's because during the period of time before the injunction issued, there's no evidence of unjust enrichment, which is the only theory of damages that PPG pursues. Let's take it a step at a time. In theory, a forward-looking injunction doesn't prevent an award of damages for past damage incurred, right? I agree, as long as there's evidence of the past damage. So why don't you get right to that point when you say, as long as there's evidence. Since your client chose not to participate, absented themselves, didn't do anything to cooperate in the discovery, and only showed up when they were getting hammered with their default judgment, on what ground do they have a basis to object and say, wait, there's no evidence? Well, Your Honor, I would answer that in two ways. The first is in terms of the legal standard that applies, and it's well established, and I don't think there's any dispute in this case, that even where there's a default judgment, the plaintiff still has a responsibility of proving up damages, and there's no authority that... Is there some authority that if you refuse to cooperate in discovery, and the best that they can do is to put forward the evidence they've got, which is the cost of their own research and development, that somehow your silence protects you? What's the authority you rely on for that proposition? Your Honor, I'm not sure that I would argue that our silence protects us. I know, for instance, PPG has made the argument that in the course of discovery, if a party engages in spoliation, for instance, there can be sanctions against the party. I would submit that's not applicable here. First of all, they never sought sanctions from the district court. They never said we need more discovery. Even after we appeared in court, they never said we don't have enough evidence to put on our... It's not a sanction, because this wasn't imposed as a sanction, right? This was not couched as a sanction. It wasn't asked for as a sanction. It was asked for as damages, and it was awarded as damages. So, let's leave the sanctionability of it aside, and just ask the question, is silence and a refusal to cooperate, if not couched as sanctions, nevertheless, a basis for a district court to say, the responsibility is to do the best we can, and the best we can under these circumstances is to use the measure of cost of research and development as a fair estimate? No, Your Honor, because in so doing, the district court departed from the principle that even in a default judgment, and this is a situation that would come up, I think, in most default judgment situations, and despite that, there's not any dispute, I think, that in a default judgment situation, the plaintiff still has to prove up its damages with the measure of reasonable certainty. I could just get in here. A default judgment occurs usually as a matter of procedure after there has been a default, and the default operates to admit every allegation in a complaint, and so it seems strange to say we don't have enough evidence of these particular items when the sum total of the complaint has been admitted. So, it almost seems that you're demanding something beyond what you've already passed on the opportunity to dispute. Well, Your Honor, in the case of a default, even though the allegations of the complaint are admitted, the burden is still upon the plaintiff to prove up damages. That doesn't seem to answer the question. I mean, we understand your position. Nobody's disputing your position that the plaintiff has an obligation to prove damages. The question being put to you is when you do nothing, when you admit everything that's been alleged against you, and you do nothing to rebut or refute what's stated to be the cost of this research and development, which your client by its default has admitted, it's circumvented by stealing the secrets. When all that's on the table, what authority do you have for the proposition that with all those things admitted, you still get to walk away because you still won't give over the information of how your records reflect benefit? Well, Your Honor, in terms of authority, I mean, one authority I would point to is the Epic Systems case, which PPG has actually relied upon heavily. And there were two types of damages at issue in that case. In addition to the part of that case that PPP discusses at length, there was also a part of that case that talked about damages for other confidential information. The jury found liability on that, but the district court granted judgment as a matter of law. And in the discussion of that, there was a discussion of the fact that merely because there was a problem with evidence, I don't remember if it was a spoliation issue or some other issue with the evidence, but that absence of evidence did not justify a finding that there had been use of those trade secrets and justify a finding of unjust enrichment. What's the complaint say about your client's benefit from the use of the secrets? I don't know if it's in the complaint or if it's in the request for admission. I believe there is general language to the effect that defendants benefited from the trade secrets. And now that's admitted. Well, again, Your Honor, I don't think that overcomes, first of all, the principle that... Well, it's admitted, right? It's admitted because there was no response, and so it's admitted. Isn't it? The allegations in the complaint are admitted as a result of... And the requests for admission are admitted, because you didn't respond to those either, right? And you know what I'm talking about. It's not you personally. I understand, yes. I mean, your client, right? Yes, Your Honor. Even if the fact of unjust enrichment were admitted, though, there'd still whether the particular damage or the particular evidence in this case of plaintiff's own research and development costs were sufficient to show that unjust enrichment by any measure of reasonable certainty. And I'd submit that they're not. There is nothing... Yeah, why not? Why isn't what it cost them, the millions and millions of dollars it required them to come up with this, a fair estimate of the unjust enrichment to your client for stealing the trade secrets? Clearly, they thought they were going to get the benefit of PP&G's research and development. That's why they wanted it. There's no other motivation plausible on the record. And indeed, it's admitted that they stole them, and they did it for the only logical reason. So why isn't that a perfectly sensible way to say that's the benefit? That's what they avoided. That was the thing they got. That's what they paid the faithless employee for. And that's a fair estimate, particularly in light of your client's refusal to provide any information. I'm just puzzled by the position that that's, you know, that's an impossible standard to use. The actual cost of developing this product by PP&G is not a fair estimate of the gain your client got by stealing the secrets. Well, it's not our position that a plaintiff's cost of research and development can never be relevant to a defendant's unjust enrichment. But here, the unjust enrichment was specifically predicated on how much research and development costs defendants supposedly avoided. And there's nothing to tie the plaintiff's research and development costs with the defendant's research and development costs. The defendants are sure there is. They're in the same business. They're making the same stuff. They're pitching it to the same people. Your client went to the same manufacturer. Why aren't those things things that tie it right to your client? Well, I think, Your Honor, if you look at the Epic Systems case, which, again, PP&G relies heavily upon, I think it illustrates the type of analysis that would have to be done, the type of evidence that would have to be put in that wasn't put in here. Wait, wait. You keep focusing on evidence, right? And when I look at the rule, and this is 55B2, it says the court may conduct hearings or make referrals, preserving any federal statutory right to a jury trial, when, in fact, in order to effectuate judgment, it needs to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. But the text of that rule suggests that it's completely discretionary on a district court as to whether it wants to hold that hearing, whether it needs evidence, whether it needs anything like that. And so, it seems weird that you want to flip it and say, wait, the absence of evidence in a discretionary hearing means that the district court erred. The district court didn't need to hold that hearing in the first place. It could have just come up with this as a proxy because you haven't disputed anything. And when you don't dispute anything, you kind of leave it at the discretion of a district court to hold a hearing or not. It just seems strange now to say, we never disputed this. Now we're upset because the evidence at the hearing we don't think was good enough on something we never disputed. I thought your stronger play in your position is a bit of a breeze. But I thought your stronger play was to say that as a matter of law, once you get a permanent injunction in place, you can't now give us unjust enrichment as well. I thought this was going to be not about the sufficiency of evidence, which I can't see a way that you win on that in a default rule. But I thought it was going to be some legal argument that you were advancing now to tell us that the presence of a permanent injunction makes R&D cost award for unjust enrichment. Your Honor, two points on that. First of all, with respect to whether or not it was required for the district court to determine damages to reasonable certainty, I direct the court to its decision in the Rainey case, Rainey versus Diamond State Port Corporation. That makes clear that even though a plaintiff prevails on default, it's not automatically entitled to damage. And I'd note that in this case, this is not the type of case where, for instance, you have a sum certain that's stated in a liquidated amount in the complaint, that this was not that type of a case where you can just look at the complaint and determine the amount of damages. I'd be remiss to not also talk about what you identified as a strong point in our brief, which is this overlap between the permanent injunction and the damages. It's our position that because the permanent injunction prevents against future harm, that damages can only be awarded for the period before that. And during that period, there was no unjust enrichment we would submit and no evidence to determine its amount. And so that's why the damages award is inappropriate. So your position really is that the proper measure of damages here is zero? Based upon the evidence that was put in, I don't know whether plaintiffs could have tried to prove up damages in some other way. They chose a particular measure of damages and they weren't able to prove that. One last question. This is Pennsylvania law we're applying, right? Correct. And am I right that under Pennsylvania law, the standard for turning around a damages award is that the award has to be so excessive as to shock the conscience of the court or is clearly based on partiality, prejudice, or passion? Well, your honor, I would submit that in this case the district court erred as a matter of law because it essentially... Well, you can answer what you want to answer in a minute, but answer my question. Is that not the standard? I believe that's the case. I don't remember that specifically for my research here. Okay. If that is the standard, what can you point to that reflects partiality, prejudice, or passion or anything that should shock our conscience? Well, your honor, I wouldn't... I'm hesitant to characterize this as partiality because I don't want it to seem like I'm accusing the district court of bias or anything like that. But it is clear from the district court's opinion that it was, you know, very motivated by policy concerns and by incentive concerns and by the fact that our client had defaulted to make this award of damages. And I understand the district court's point on that, but that didn't justify the district court departing from an appropriate measure of damages here. All right. Any other questions, Judge Porter? Judge Phipps, anything else? No, nothing further. Thank you. Okay. We'll have you back on rebuttal, Mr. Sperl. Thank you. Thank you. Hear from your colleague, Mr. Merck. Good morning, your honors. May it please the court, my name is Alexander Merton, and I'm here on behalf of Appellees, PPG Industries, Inc. Finally, in the appellant's reply brief, they finally admit that research and development costs are an appropriate measure of damages for trade secret cases. And thus, the only issue before this court is a factual one, subject to review for abuse of discretion. Well, why don't you jump right on the point that Mr. Sperl made repeatedly, which is evidence matters and you've got no evidence. That makes perfect sense, Judge Jordan. Judge Jordan, the court concluded, the district court concluded that defendants were unjustly enriched by at least $8.8 million by avoiding to have to spend the same money and costs that PPG did, both time and money. The evidence in the record is using PPG's trade secrets, hired a former PPG industrial engineer to stand up a competing factory to produce products. We're with you, like, we're all familiar with the facts. So I don't, and they don't dispute the facts. They don't, they're not trying to sugarcoat the fact that they did a whole bunch of bad things. I take their argument to be, and they hit the note again and again, we may be bad people, but you still have to show some measure of damages recognized under trade secret law in Pennsylvania in order to get a multimillion dollar award. And you what's your basis for saying, because they point to cases like healthcare advocates, they point to part of Epic Systems, and healthcare advocates, the court said, in effect, I don't care that they didn't answer your discovery. You didn't come forward with evidence. You don't get anything. What's your response to that? Your Honor, the response is very clear. And it's as you had gracefully written in Oakwood that a defendant's avoided research and development costs are among, quote, several approaches by which the amount of harm, not simply the fact of harm, may be measured. That's Oakwood at 914, and particularly the footnote at 921, citing the Bosnick case out of the Fifth Circuit. The point is, and in fact, the Oakwood case goes further to say that just because the defendant in that case hasn't necessarily made a competing product already, that's not necessarily sufficient. It still means that Oakwood could have been harmed by their lack of exclusive use of those trade secrets, and that that is, in fact, recoverable under the Trade Secrets Act. Would you agree that you can't get forward-looking injunctive relief and anticipatory damages, that is, damages for expected future harm? I would say that that depends on the terms of the injunction, Your Honor. Well, wouldn't the anticipation that, okay, you're going to make money off this in the future, and so I'm giving money for future hurt, and I'm enjoining, aren't those things contradictory? Well, the short answer, Your Honor, is I could plausibly see a way where a defendant or a plaintiff could argue that the gain that they realized were from competitors that were not lost profits, but that would, in fact, still be unjust enrichment gain and forward-facing. I'm not sure I'm following you. I take your learned opponent's position to be they've got an injunction going forward, and if they're enjoined going forward, that's all the relief they're entitled to in the future. You can't give them an injunction. You can't enjoin us and make us pay for damages that haven't happened yet. What is wrong logically with that? Do you have any authority for the idea that you can get both? Both unjust enrichment or, let's say, forward-facing damages based on a permanent injunction? Yeah, damages based on something that hasn't happened yet. Sure. Well, I'll give you an example, Your Honor. In this case, again, what I would say is that it depends on the terms of the permanent injunction. What about this one? What about this injunction? The permanent injunction here is limited to transactions that affect U.S. interstate commerce. There's evidence in the record that defendants were soliciting customers, railway customers, in China, and particularly aircraft customers in China. Query whether or not those transactions would be falling under the terms of this particular permanent injunction. In such a scenario, Your Honor, it may be the case that we would be entitled to forward-facing damages that are not necessarily captured by the permanent injunction at issue. Are the damages that were given here forward-facing? Absolutely not, Your Honor. Okay. Absolutely not. So then we're just talking around theoretical here. With respect to the permanent injunction, Your Honor, that's absolutely correct. Then why did the district court give the Coca-Cola trade secret example and talk about it in a way that indicated, you know, you could do something in the future that would be a benefit to you? What was that about? Well, I think, Your Honor, what the judge was talking about there were two exclusively different things. The judge, the district court, I think properly is making an analogy. When I went to, let's say, the Coke factory in Atlanta, I went through the tour. By the end of that tour, I thought that the recipe for Coke was priceless. And if I were some competing Coke manufacturer or soda pop manufacturer, I saw that and I acquired that trade secret by itself, by improper means. By itself, that would have intrinsic value to me. Here's the problem I have with that example. What if the trade secret that you stole from Coke was the formula for new Coke? That bad choice. What I would say, Your Honor, is in that specific instance, what I'm talking about here is that there was, in fact, use in this case. And the district court had found that there was use in this case. But let's back up. To say that R&D costs are always a sufficient measure of damage, it doesn't make sense to me. Again, if what you stole is the new Coke formula, that would be a windfall to Coke, right? To give them R&D costs tripled. Well, what I would say, Your Honor, is that I don't think we contend that it's sufficient R&D costs are a sufficient measure of damages. We would say that in this particular case, given the facts here, it's certainly a sufficient measure of damages. Because the undisputed facts in the record, supported by appellants, internal communications, among other things, show that they, in fact, put those trade secrets to use, as the district court had determined. That they had built a facility, hired people, solicited molds. So what you're doing is you're taking us down a road where it's a question of degree. The more that they use the R&D costs, the more likely that unjust enrichment would be available for recouping those R&D costs. You've resisted the question by Judge Porter to view this as just a distinction of kind. And say, once you steal these secrets, then as a matter of law, you're entitled to R&D costs. And I guess, I don't know why you're backing off that principle of law quite so fast. It strikes me that once you have those secrets, you have a valuable option. You can try to use them. You can wait a few years, try to use them something else. You can use them to develop a related technology. There's all these options that the thief has. And so, rather than kind of say, well, we see no value in that option contract. We only see value when they start walking with that option. You conceded that this is a question of degree and not one of kind. And I wonder why you made that concession. Well, that's not necessarily true, Your Honor. We would certainly agree that as a matter of statutory construction, that is, the plain reading of the statute allows for a misappropriation of trade secret merely by the improper acquisition, and as a result, only. The Pennsylvania Uniform Trade Secrets Act would permit recovery of damages measured, among other things, by lost profits or unjust enrichment. In this case, Your Honor, I think that the key question that the district court would have to determine in that kind of case, not a case here where we actually have use, is the value of that intrinsic asset or trade secret that they had stolen by improper means. But that's just not necessarily what we have here. But it's entirely possible under the statute, as Judge Phipps has indicated. Another way of describing what they did, as we said in Oakwood, is that they effectively assumed for themselves an unrestricted license in PPG's trade secret. And one way to measure the value of those licenses is through a reasonable royalty, which is another option that was available. But it seems like no one discussed that measure of damages. Why not? Well, because... And let me add, R&D costs are a permissible component of the reasonable royalty measure of damages. Well, the short answer to your question, Your Honor, is that research and development costs, given the facts and evidence of this case, was the most straightforward method of finding damages going forward. And at the time when we're moving for default judgment, as PPG moved for default judgment, there was no one on the other side. And so it makes most sense, or at least made most sense in the first instance, to take what was the most conservative, reasonable, and exacting way of measuring damages and putting that before the judge so that the judge had an easier time to ensure that the damages award that the judge gave was predicated on the evidence on the record. Is your burden for establishing damages any different because TMG defaulted? No, Your Honor. The default... No. The short answer to your question is no, Your Honor. All right. And so the... maybe an unstated premise, but a partial premise in some of Mr. Sperl's argument may have been that we were getting sanctioned without it being called a sanction. I shouldn't attribute it to that. What if we were concerned about that? What I would say, Your Honor, is that that's a misreading of what Judge Hornack was dealing with in his order. In his order, in response to that, where that came up, he specifically says, quote, defendant argued that because they never used the stolen trade secrets to manufacture a actually obtain any benefit from Rukavina's information, and that this argument lacks merit, unquote. That's at 836. What he's addressing there is because defendants argued that there was no finished product, therefore there's no use. What he's saying is that to credit that argument in light of the evidence of the record would be that would create some sort of incentive concerns. But it has no bearing on the fact that there was sufficient evidence to make the factual findings that Judge Hornack did at that time. And that's, in fact, consistent and goes directly to the language in Oakwood, where we say, quote, even if it's true that defendant had not yet launched a competing product, that does not mean that Oakwood is uninjured. It has lost exclusive use of its trade secret information, which is a real and redressable harm. That's Oakwood at 914. Judge Hornack's argument and Judge Hornack's determination is completely consistent both within his discretion as well as within, you know, the logic that was set forth by this court in Oakwood. I would say it's particularly on point. Judge Phipps? No, nothing. Thank you. Okay. Thanks very much. Thank you, Your Honor. Your Honor, my colleague mentioned Your Honor's decision in Oakwood a couple of times. I'd like to address that. Nothing in Oakwood suggests that there is unjust enrichment in the absence of actual commercial use of a trade secret. It stands for the... Let's assume that's true. Let's just assume for the sake of discussion that's true. Respond to Mr. Merton's point that there's ample evidence in this record that you did make use of it. That you took the designs, you sought out a manufacturer for those designs, you built a factory, you hired employees to, in fact, put into practice the trade secrets that you stole. And that all of those things constitute use. What is it in your... Does your position come down to because no finished product rolled off an assembly line, there was no use? Not exactly, Your Honor. I would say that... And first of all, with respect to the factory, I don't think the evidence supports that the factory was actually built in China. There was some discussions of certain preparations. But setting that aside, I think our position would be that the nature of the use has to support the theory of damages. And here the theory of damages was avoided research and development. And the sort of putative attempts to use this do not suggest that there was avoided research and development costs. If it's in fact the case that there was evidence, and when we look at the... I shouldn't speak for... When I look at the record, I see the things that they're pointing to. There was in fact... I'm not saying the last brick was cemented in place, but there was a factory being developed, planned, built. There was a... All the hiring was in a process to put a factory into operation. And the purpose of the factory was clear because PPG's own drawings in effect copied over were submitted to a manufacturer for use. What is it in that scenario that would have us start puzzling about whether these were being used? Aren't all those things clearly showing they were being used? The trade secrets were in use. Well, ultimately TMG is in no better position than it had been if it had just put the trade secret in its pocket, so to speak. There was no unjust enrichment because there's no benefit that they... Your answer to that has to be, no, there was no finished product. That is your position in the end. We didn't sell anything, so we didn't get anything out of it. Is that where we're at? Well, no, Your Honor. So suppose, for instance, there actually was evidence that there had been a fully finished factory built in China. In order to do that, you would have had to engage in research and development to build up the factory. So even if the first widget didn't come off of the assembly line, I think if you had that evidence, which you don't have here, maybe you could infer that there was some avoided research and development costs. But I would submit that doesn't exist on this record. Judge Phipps, I'm sorry. Did you have a question? No, it's fine. Okay. Your Honor, I'm sorry. If I may, I just... If I could, I'd like to give a pin site. I referred to Epic Systems in my opening argument. There was a section of that case that discussed, even though there was an adverse inference, that's at 980 Federal 3rd at 1135-36. All right. Thanks, Mr. Sperl. We've got the case under advisement. Appreciate counsel's argument. And we'll call our next...